Anna Belle FOSTER, Plaintiff in Error,

v.

John J. HARDING, d/b/a Rose Hill Burial Park and Mausoleum, and John Andrews and William B. Rogers, Co-Administrators of the Estate of John J. Harding, Successor Trustees d/b/a Rose Hill Burial Park and Mausoleum, Defendants in Error.

No. 41013.

Supreme Court of Oklahoma.

Feb. 14, 1967.

Rehearing Denied March 21, 1967.

Farmer, Woolsey, Flippo & Bailey, by Robert J. Woolsey, Tulsa, for plaintiff in error.

Rucker, Tabor, Shepherd & Palmer, Robert L. Shepherd, O. H. "Pat" O'Neal, Donald G. Hopkins, Tulsa, for defendants in error.

BERRY, Justice.

Plaintiff in error brought this action to recover damages for personal injuries allegedly sustained as the result of a fall upon the stairway of a mausoleum owned and operated by defendant in error. The trial court sustained defendant's demurrer at the close of plaintiff's evidence, and entered judgment dismissing the action. This appeal involves the propriety of the trial court's order and judgment.

Plaintiff's petition charged defendant owed a duty to the invited public to maintain the premises in a safe condition by providing adequate lighting and handrails upon the stairway; that defendant violated this duty in that, although there were adequate lights, the defendant's agent failed to turn the lights on, or direct plaintiff's attention thereto when she undertook to use the stairs. Further negligence was charged in defendant's failure to comply with certain of the Revised Ordinances of the City of Tulsa specifically pled in the petition.

Defendant answered by general denial, coupled with the special pleas of unavoidable accident and contributory negligence.

Plaintiff's evidence established that she went to the cemetery and mausoleum, accompanied by a daughter-in-law and that person's small child, to pay their respects to relatives there interred. The mausoleum contained a small chapel in which funeral services were held. While in the mausoleum they inquired as to location of a particular crypt. An employee advised them to ask directions at the office, and showed them the stairs leading down to the basement, where the office was located. The evidence showed this stairway consisted of seventeen or eighteen relatively steep steps, constructed of smooth, white marble. The stair walls also were of smooth, marble construction. It was undisputed that there were no handrails on either side of the stairs. Also it was undisputed that, although there were lights over the stairway, operated by a switch at the head of the stairs, these lights were not on at the time of accident. Plaintiff, preceded by her companions, started down the stairs and when nearly to the bottom mistook the last step for the floor and fell, sustaining injuries for which she sought recovery.

Plaintiff testified she proceeded down the stairway with caution because it was dark. Because there was no handrail, she kept her hand on the wall, but this was insufficient to prevent her falling. The steps were white marble and the walls were white and she was blinded by the white marble steps, and thought she was at the bottom of the stairs, but missed the last step thinking she was at the bottom of the stairs because of all the white. Defendant's employee came down the stairs, after plaintiff fell, and stated that she could have turned the lights on.

The parties stipulated that the applicable and effective ordinances of the City of Tulsa provided:

"Buildings of Class 7. (Church, Place of Worship).

"*Section 339. Class 7 Defined.* In Class 7 shall be included every building used as a church or place of worship.

"*Section 357. Lighting Service Requirement.* * * * Provisions shall be made to properly light every portion of a building of Class 7 and every outlet therefrom leading to the outside of the building, and all open courts, passageways, and emergency exits."

Also in effect at the time were ordinances concerning Class 2 buildings "Office Building, Etc.," providing:

"*Section 295. Stairs. Other requirements.* * * * (j) Stairways which are less than three feet three inches wide shall have not less than one handrail and stairways which are more than three feet three inches wide shall have not less than two handrails."

The trial court sustained the demurrer to plaintiff's evidence, for the stated reason that he was unable to find existence of primary negligence, under the rule in Pruitt v. Timme et al., Okl., 349 P.2d 4. The trial court's action resulted in this appeal.

■ In reviewing the trial court's action we are required to consider the facts, circumstances, and reasonable inferences fairly deducible therefrom, in the light most favorable to plaintiff, while treating as withdrawn any evidence favorable to the demurrant. Upon such consideration, unless it can be said that all reasonable men would agree the defendant was free from negligence, or that defendant's negligence was not the proximate cause of injury, the case should be submitted to the jury, and it is reversible error to sustain a demurrer to the evidence. Lawson v. Lee Eller Ford, Inc., Okl., 375 P.2d 913; Putt v. Edwards Equip. Co., Okl., 413 P.2d 559.

■ First to be considered is the question as to applicability of the ordinances involved. The settled rule is that violation of a city ordinance constitutes negligence per se, where the other elements of actionable negligence are present. Harbour-Longmire Bldg. Co. v. Carson, 201 Okl. 580, 208 P.2d 173. The question then simply is whether a mausoleum which contains a chapel, and a business office in the basement, is within the classification mentioned in the ordinances?

We recognize that the ordinances involved are vague and indefinite for failure to define buildings included in general classes. Without discussion from this standpoint, we are of the opinion the building involved does not come within the classification attempted to be made by the ordinances. Although the evidence showed the mausoleum contained a chapel where funeral services were held, nothing indicated such chapel was utilized regularly for worship services.

The term "church" is variously defined. In the primary sense as expressive of a place, it is defined as an edifice or place consecrated to the honor of God, or where persons regularly assemble for worship. See 14 C.J.S., Church, p. 1116. In Scott County v. Roman Catholic Archbishop, etc., 83 Or. 97, 163 P. 88, a church was defined as a building intended primarily for purposes connected with a faith, or for propagating a particular form of belief. Also see Stubbs v. Texas Liquor Control Board (Tex.Civ.App.) 166 S.W.2d 178.

In Newark Athletic Club v. Board of Adjustment, etc., 7 N.J.Misc. 55, 144 A. 167, 168, the court said:

"The reports and digests are peculiarly barren of judicial definitions of church edifices. In 11 C.J. 763, it is said a church edifice is 'a building in which people assemble for the worship of God and for the administration of such offices and services as pertain to that worship.' The same definition is to be found in 7 Cyc. 130. In 1 Bouvier's Law Dictionary, 486, a church is defined as: 'A society of persons who profess the Christian religion. Den ex dem. Day v. Bol-

ton, 12 N.J.Law 206–214; Stebbins v. Jennings, 10 Pick. (Mass.) 172, 193; German Reformed Church v. Commonwealth, 3 Pa. 282; St. Johns Church v. Hanns, 31 Pa. 9. The place where such persons regularly assemble for worship. Blair v. Odin, 3 Tex. 288.' In 37 Cyc. 943, the phrase, 'place of public worship,' in the statutes exempting church property, is construed as meaning a house or building which is actually and exclusively used for the holding of religious services, or one which is principally so used, where any other uses to which it may be put are either related to the religious or charitable work of the congregation, or else are only incidental or occasional and not a source of revenue. And therein it is further said: 'III. It is well settled that a rectory or parsonage built and owned by a religious society is not exempt from taxation as a "place of public worship" unless such rectory or parsonage is used for no other purpose than as a residence for the priest or minister, who occupies it rent free, and although it is situate on the same lot as the church nor is it exempt because of the fact that occasional religious services are held there or that a room or a part of it is set aside as a chapel, or that it is also used for meetings of the vestry and associations connected with the church or that other acts connected with the work of the church such as the hearing of confessions, performing of marriage ceremonies, etc., are sometimes performed there'—citing, amongst other cases from other jurisdictions, State v. Axtell, 41 N.J.Law 117; State v. Krollman, 38 N.J.Law 323; State v. Lyon, 32 N.J.Law 360."

■ The term "worship" has been held to include performance of external acts and the observance of those rites and ceremonies engaged in by men with the professed aim of honoring God. People ex rel. Ring v. Board of Ed. etc., 245 Ill. 334, 92 N.E. 251. And, it is suggested that a funeral service under such definition would render the mausoleum subject to the ordinances involved. It is apparent, however, the mausoleum is not intended primarily for purposes connected with propagating a particular form of belief. Rather, it is a place devoted primarily to the formal interment of deceased persons with appropriate ceremonies. Should a mausoleum be defined as a place of worship, then the private chapel in a mortuary, or a room in a home set apart for daily devotional services on appropriate occasions, necessarily would require such building or home to be considered as a place of worship and governed by the ordinance. Such interpretation would lead to absurd results. We hold that the chapel in question was not a church or place of worship within the meaning and intent of the ordinance involved.

■ Also involved is the question whether, since the mausoleum contained an office, or offices, in the basement, the ordinance which required stairways with handrails in the office building applied to defendant's property. Again it is to be noted the ordinance involved makes no attempt to define an office building. Thus the question is whether a building which contains an office is to be considered as an office building within meaning of the ordinance. We hold that the ordinance was not intended to be so applied. Such interpretation would require that every business enterprise which contains an office for conduct of its own affairs, or every dwelling in which a room is devoted to business endeavor, would fall within the category of an office building and governed by the same requirements and responsibilities as the multi-storied structure where floor space is rented by the square foot. The comparison is odious and we decline such an interpretation.

■ Defendant urges the applicability of Pruitt, supra, and our more recent holding in Jackson v. Land, Okl., 391 P.2d 904, asserting the rules expressed, particularly in Pruitt, are decisive of the present appeal. In Land, supra, the rule expressed (syllabus 3) is that there is no duty or ob-

ligation to warn an invitee against obvious dangers, and in absence of a duty neglected or violated, there is no actionable negligence. The distinguishing feature is that the patent faulty condition of the driveway admittedly was known and recognized by the plaintiff at the commencement of the tenancy. Thus there was neither an obligation to warn, nor actionable negligence arising from a duty neglected or violated.

The critical question involves correctness of the trial court's determination that plaintiff's evidence failed to disclose primary negligence, in view of our decision in Pruitt, supra. That case involved an action by a person who entered an apartment house on a social call, fell down an unlighted stairway and was injured. This conclusion was based upon the declaration plaintiff was an "invitee." Such declaration as to the character of plaintiff's right upon the premises obviously was erroneous and inadvertently made. The factual recitation, that plaintiff was an invitee because of having been invited there to visit, reflects such inadvertence since the rules applied were those applicable to social guests.

■■■ The general text rule expressive of the difference in relationship between invitees and social guests denominates the relationship between host and guest as that of licensor and licensee. And, the host is not responsible for defects in the premises, except where there is failure to warn or needless exposure of the guest to danger. 38 Am.Jur., Negligence § 117. In Comeau v. Comeau, 285 Mass. 578, 189 N.E. 588, 92 A.L.R. 1002, at page 1004, the distinction is stated: one rightfully upon the premises of another for purposes as to which the owner or occupant has no beneficial interest and takes the premises as he finds them without claim to any duty beyond other than not to be wantonly or wilfully injured. One rightfully upon another's premises for purposes in which the owner has some beneficial interest can claim a duty of finding premises in a reasonably safe condition for discharge of the common purpose. "Beneficial" has a business or commercial significance and does not partake of the intangible advantages of social intercourse. Between invitor and invitee there must be some benefit to the former, or a mutuality of business interest, to render the invitor liable for failure to use ordinary care. The words "invitor", "invitee" are not pertinent to principles governing the relationship of host and guest, which are dependent upon social considerations.

The conclusion in the Comeau case, supra, was based partially upon the reasoning in the early English case of Southcote v. Stanley, 1 Hurl. & N. 247. Therein it was stated that the rule, that a guest has no rights greater than a licensee, is based upon the principle that a guest receiving gratuitous favors from another has no relationship which creates a duty upon the host to make the premises better or safer than when hospitality was extended. Also see annotations: 51 A.L.R. 576; 71 A.L.R. 1198; 25 A.L.R.2d 607.

We are of the opinion Pruitt, supra, is neither in point nor controlling herein. The conclusion correctly announced the rule applicable to social guests who come upon the premises, although loosely characterizing the guest as an invitee rather than a licensee. Although recognizing correctness of the result, the rule cannot be controlling where the terminal issue involves the nature and extent of care owed an invitee. The trial court erred in declaring the Pruitt case, supra, determinative of plaintiff's cause of action in this appeal.

Later in time than either Pruitt or the present appeal is our decision in Harrod v. Baggett, Okl., 418 P.2d 652. Whether the parties could establish the character of plaintiff's presence upon the premises by argument as being that of an invitee need not be discussed. But see Henryetta Construction Co. v. Harris, Okl., 408 P.2d 522. The language from Pruitt, supra, quoted at length at 418 P.2d page 655, is a quotation of text law (38 Am.Jur., Negligence § 102) and authorities from the footnotes.

The decision in Baggett, supra, turned primarily upon the rule in Jackson v. Land, supra, since the asserted danger admittedly was obvious and readily observable by the plaintiff. The result there does not conflict with our conclusions in the present appeal.

The rule is that when a building owner directly or impliedly invites others to enter for some purpose of interest or advantage to such owner, a duty is owed to such persons to use ordinary care to maintain the premises in a reasonably safe condition consistent with the purposes of the invitation, and to give timely warning of latent or concealed peril known to the owner but not to the invitees. To the extent of the invitation given, the property owner owes to the invitee a duty of prevision, preparation and lookout. 38 Am.Jur., Negligence § 96. This rule was recognized and applied in the early case of City of Shawnee v. Drake, 69 Okl. 209, 171 P. 727, L.R.A.1918D, 810. Also see Julian v. Sinclair Oil and Gas Co., 168 Okl. 192, 32 P.2d 31; C. R. Anthony Co. v. Williams, 185 Okl. 564, 94 P.2d 836, and authorities therein cited; Clinkscales v. Mundkoski, 183 Okl. 12, 79 P.2d 562.

Where, from a common interest or mutual advantage, there is express or implied invitation to use the premises an obligation to use reasonable care arises from the relationship of the parties. The defendant impliedly invited plaintiff to use the premises for a purpose of common interest and mutual advantage. Defendant then owed a duty to exercise ordinary care to prevent injury by keeping the premises in a condition reasonably safe for such use. A breach of that duty resulting in injury would constitute actionable negligence.

The rule which controls under such circumstances was stated in syllabus 3 of Lisle v. Anderson, 61 Okl. 68, 159 P. 278, L.R.A.1917A, 128, in this language:

"Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person, rightfully there, will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises; and, if such care is not exercised by the party on whom the duty rests and injury to another person results therefrom, liability on the part of the negligent party to the person injured will generally exist, in the absence of any other controlling element or fact, and this, too, without regard to the legal relationship of the parties."

The standard by which defendant's conduct was to be measured was what an ordinarily prudent and careful person would have done under the circumstances disclosed. Smith v. Maher, 84 Okl. 49, 202 P. 321, 23 A.L.R. 270; Garner v. Meyers, Okl., 318 P.2d 410. Whether the standard is applied upon the basis that defendant reasonably could have foreseen the probability of such an occurrence, or upon the basis that in exercise of ordinary care defendant reasonably would have apprehended the accident as a natural and probable consequence of the condition of the premises, is unimportant. The circumstances necessarily required recognition of the fact that invitees of varying ages and degrees of physical infirmity necessarily would utilize the stair in the normal course of affairs. Whether the condition and maintenance of the stairway as shown violated the duty of a reasonable and prudent man to have the premises in a reasonably safe condition, and whether such violation was the proximate cause of plaintiff's alleged accidental injuries were not matters of law determinable by the trial court.

Judgment reversed and cause remanded with directions to set aside the order sustaining the defendant's demurrer and the judgment dismissing the action.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, BLACKBIRD, LAVENDER and McINERNEY, JJ., concur.

DAVISON and HODGES, JJ., dissent.