Willard CHAPLINSKI, Appellee,

v.

J. T. GREGORY and Harold Wilson, Appellants.

No. 49435.

Supreme Court of Oklahoma.

Feb. 1, 1977.

Ted R. Fisher, Johnson & Fisher, Tulsa, for appellee.

James M. Hinds, Edgar, Manipella & Hinds, Tulsa, for appellants.

DAVISON, Justice.

This case involves an appeal by appellants from a plaintiff's judgment in a civil action in which appellee Willard Chaplinski, who in June, 1973, purchased 45 cows from appellant J. T. Gregory and Harold Wilson, sought money damages arising out of misrepresentations made concerning the cattle, for breach of contract, breach of warranty, and for fraud.

The trial judge, to whom both issues of fact and law were tried, a jury having been waived, entered a judgment in favor of plaintiff for $30,000.00; this judgment did not include any award for punitive damages. In their petition in error, which is solely controlling since no motion for new trial was made appellants urge that the trial court erred in three respects:

1. The judgment was not supported by the evidence.

2. The court erred in overruling defendant's demurrer made at the close of plaintiff's case in chief.

3. The court erred in overruling defendant's demurrer at the close of all evidence.

All three errors urged by appellants are based on one proposition that the judgment was not supported by the evidence.

In examining appellants' contention, we first note the facts alleged in the trial court. Appellee Chaplinski alleged that he purchased 45 head of cattle from appellants for the purchase price of $15,075.00. Then, alleging fraudulent misrepresentation, the appellee states that the appellants represented and warranted the cattle as follows:

a. All cows were Springers [1] that would calve before September 1, 1973.

b. All were bred to Hereford and Angus bulls.

c. All were cows under six years of age.

d. All were free of disease, clean and healthy cows.

e. All cows were from the appellant Wilson's Pawhuska Ranch herd.

At trial, appellee Chaplinski testified that these representations were made by defendant Gregory, the authorized agent of Wilson, that he relied upon the representations made, and that the representations and warranties made by the defendants were false and untrue for, (1) none of the cows were Springers which calved on or before September 1, 1973, (2) only eight of the cows were bred to Angus or Hereford bulls, (3) all of the cows were more than six years of age, (4) the cows were not from a single

---

1. Definition 3 of "Springer" in the American Heritage Dictionary of the English Language reads: "*Western U.S.* A cow about to give birth."

clean ranch herd and (5) the cows were not clean and healthy, but were diseased and afflicted with communicable diseases.

The appellee also testified that only twenty of the forty-five cows calved, the remaining twenty-five head did not calve or produce living and healthy offspring; that nineteen head died attempting to deliver large, exotic breed calves sired by large breed, exotic bulls, not Hereford or Angus bulls as represented; eight of the cows were open and not bred; one cow had bangs disease; and one cow had anaplasmosis. The appellee further testified that because of the diseased condition of some of the purchased cows, he was forced to innoculate and quarantine his herd and that eight of his registered Angus breeding cows, owned by appellee prior to his purchase of the cows in question, were infected by the diseased cow purchased from the appellants and subsequently died, as did a valuable Angus bull.

In his petition, appellee alleged his damages as follows:

"That plaintiff's 75 registered Angus cows, in his registered breeding herd, were bred to a highly pedigreed valuable registered Angus bulls, and prior to their contamination by the cows acquired from the defendants, were productive of issue desirable for herd sires and breeding cows in the Angus registered purebred and commercial cattle industry. That premium prices and values of $1,500.00 each was thereafter lost, as a direct result of contamination and communicable disease from the cows misrepresented by defendants, for an actual, pecuniary and monetary loss to the plaintiff of approximately $15,000.00."

"That plaintiff suffered further monetary loss of $335.00 per head for the cost of said 19 cows that died attempting to calve exotic offspring instead of Angus or Hereford cross calves, as represented by defendants, for the sum of $6,365.00."

"The loss of 8 cows and their calves and one bull from plaintiff's original registered healthy herd, from anaplasmosis, contacted from the Wilson-Gregory 45 Angus cow herd, of the value of $22,-000.00."

"Plaintiff further suffered the loss of the difference in the actual value of said cows, at the time of purchase, and their value, if they had been as represented by defendants, the same being approximately $200.00 per head for the 26 head which lived, or a total of $5,200.00."

"The monetary loss suffered for the cost of vaccine, medicines and veterinary services and extra labor, directly attributable to infection and contamination from the cows purchased from defendant, in the sum of $900.00."

"The cost of feeding and pasturing of the cows which died calving, as a monetary loss to the plaintiff in the sum of $600.00."

"That if the 45 head had been Springer cows, as represented and had all calved before September 1, 1973, as represented, then in November, 1973, the plaintiff would have had 45 cows with their 45 calves ready to be marketed at a going price of $500.00 per pair, or a total of $22,500.00; that the plaintiff intended to sell such cattle in this manner when he purchased them and so communicated his intentions to the defendant prior to and at the time of purchase."

"That since the cows did not calve as represented, the cattle were worth only $11,250.00 in November, 1973, and therefore, plaintiff has lost reasonable and anticipated profits of $11,250.00."

"For total actual damages in the total of $61,315.00."

Additionally, appellee prayed for punitive damages of $60,000.00.

■ At trial, plaintiff testified that three of four of the cows purchased from appellants died of anaplasmosis, that nineteen of the cows purchased from appellants died while attempting to deliver oversized calves, that three of the cows purchased from appellants had or were suspected of having bangs disease and as a result, appellee was required to rebate purchase money to a subsequent purchaser of the three head. Appellee also testified as to the ex-

tent of veterinary bills caused by the breach of warranties, testified that eight cows from his registered herd died of anaplasmosis, that they were replaced at the cost of slightly less than $11,000.00, and that a registered bull who died of anaplasmosis was replaced at the cost of approximately $5,000.00.

Testimony at the trial also demonstrated that although the herd infected with anaplasmosis was vaccinated, those that survived the disease would for the rest of their lives be carriers of the disease, and therefore according to Dr. Miller's testimony, which was admitted without objection, no one would wish to purchase the cattle. The court having heard testimony as to the replacement value of eight of the cows from the registered herd, and the purchase value of the nonregistered cows, was justified in finding that the actual damages involved amounted to $30,000.00.

■ Although much of appellee's testimony was contradicted by testimony of the appellants, there was clearly sufficient evidence before the trial court to justify a finding that misrepresentations were made and that appellee had suffered damages because of the misrepresentations and breach of warranties.

■ Appellants' main attack on the sufficiency of the evidence is an attack upon the causal relationship between the condition of the cows they sold appellee, and the disease contracted by appellee's registered herd. Appellants argue that there was no causal connection shown, because of the remoteness in time and because expert testimony did not connect their sale of the cattle to the disease suffered by appellee's registered herd. We do not agree with appellants' contention.

Veterinarian, Dr. Gloyd Miller, testified as to the symptoms of anaplasmosis, indicating that the disease is transmitted by bloodsucking insects. Leonard Boyles, the truck driver who moved the cows in question from appellant Gregory's ranch to appellee's ranch, testified that when he loaded the cattle, he noticed one cow who was covered with horseflies, which the veterinarian testified was a symptom of anaplasmosis. Mr. Boyles further testified that none of the other cows, except that one, was so infested with the flies.

Both appellee Chaplinski and a former ranch hand of his, testified that within 24 hours of the sale, they noticed one of the cows purchased from appellants was suffering from symptoms of anaplasmosis.

Dr. Miller testified that in September, 1973, approximately three months after the sale, he diagnosed two of the cows, which appellee identified as cows he had purchased from appellants, to be suffering from anaplasmosis. The doctor also testified that Mr. Chaplinski's registered bull also appeared to be suffering from symptoms of anaplasmosis. The doctor also testified as to the treatment he rendered. In response to a hypothetical question, the doctor testified that one cow afflicted with anaplasmosis could contaminate the rest of the herd if the one cow had an acute case of the disease. Then, the doctor testified that it was his opinion that the cows he examined were suffering from an acute case of anaplasmosis.

The veterinarian's testimony, coupled with that of the appellee, the truck driver, and appellee's ranch hand, together with all reasonable inferences to be drawn from the testimony, sufficiently establish a link connecting the cause of the disease suffered by appellee's herd with the cattle sold by appellants. In deciding this issue, we note that appellee testified to many years of experience as a cattleman, and to particular experience with cattle suffering from anaplasmosis; he further testified, without objection, that the cattle purchased from appellants were suffering from anaplasmosis within a day or two after the purchase of the cattle. Because of appellee's expertise and because his testimony was not objected to, we hold that it, coupled with the other testimony, was sufficient to trace the anaplasmosis back to the cattle purchased from appellants.

Appellants' next objection is that even if the testimony was sufficient to establish a connection between the cattle sold and the

registered herd contracting anaplasmosis, there is no expert testimony to indicate that the registered herd was suffering or had ever suffered from anaplasmosis.

 In response to this objection, we first note that Dr. Miller testified that one of the registered bulls was showing symptoms of anaplasmosis, and we also note that appellee testified as to the extent of the disease through the herd. Appellee testified that he was 34 years old and that he had been in the Angus breeding business virtually all of his life and that he was "born and raised among cattle." He also testified that he had a great deal of experience with cows suffering from anaplasmosis. We note that the symptoms he described were virtually the same as those described by Dr. Miller, indeed appellee's diagnosis of the cows examined by Dr. Miller was verified by him. Because of appellee's experience in the cattle business, because of his particular experience with cows suffering from anaplasmosis, and because his description of the disease symptoms corresponded with those described by Dr. Miller, we hold that the trial court properly admitted Mr. Chaplinski's testimony as to the extent of the disease in his herd, for a proper predicate was laid showing that Mr. Chaplinski had special knowledge, skill and experience in the field.

 We also note that although appellants made many objections to the admissibility of the evidence, they did not cite any admissions of evidence as errors in their petition in error, and therefore we need not consider whether the court acted properly in admitting evidence which was objected to.

 Although there was evidence contradicting much of appellee's testimony, such conflicting testimony and evidence is not properly considered by a trial court when ruling on a demurrer to the evidence. See e. g., *Shoemake v. Stich*, Okl., 534 P.2d 667 (1975).

In *Smith v. Davis*, Okl., 430 P.2d 799 (1967), we held that the sufficiency of the evidence to sustain a judgment in a law action will be determined in the light of the evidence tending to support the same, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it.

 In *Video Independent Theatres, Inc. v. Cooper*, Okl., 421 P.2d 833 (1967), we stated:

"This Court in reviewing a judgment entered upon [a] jury's verdict must presume that the jury accepted as true the evidence which supports [the] verdict."

The same rules of review are applicable in a civil action where the jury is waived and the trial judge is the trier of fact. E. g., *Walker v. Duncan*, Okl., 469 P.2d 647 (1970) and *Givens v. Western Paving Co.*, Okl., 261 P.2d 450 (1953).

In the case now before us, under the above rule, we must assume that the trier of fact, the trial judge, accepted as true, evidence which would support his verdict. In so doing, we note that it was within the purview of the trier of facts to choose to believe appellee's testimony, and we assume that he did. This being so, there was sufficient evidence to support the judgment rendered by the trial court. In so holding, we note that no direct attack was made upon the judgment as an excessive one. Judgment of the trial court is accordingly sustained.

AFFIRMED.

All the Justices concur.