Kenneth David BOYLES and Debra L.
Boyles, husband and wife,
Plaintiffs–Appellees,

v.

OKLAHOMA NATURAL GAS COMPA-
NY, a Foreign Corporation; Accurate
Fire Equipment Company, an Oklahoma
Corporation; Jay Leasing Company, an
Oklahoma Corporation and George
Carder, d/b/a George Carder Plumbing
Company, Defendants–Appellees,

Canteen Corporation of Oklahoma,
an Oklahoma Corporation,
Defendant–Appellant.

Kenneth David BOYLES and Debra L.
Boyles, husband and wife,
Plaintiffs–Appellees,

v.

OKLAHOMA NATURAL GAS COMPA-
NY, a Foreign Corporation; Accurate
Fire Equipment Company, an Oklahoma
Corporation; Jay Leasing Company, an
Oklahoma Corporation and Canteen
Corporation of Oklahoma, an Oklahoma
Corporation, Defendants–Appellees,

George Carder d/b/a George Carder
Plumbing Company,
Defendant–Appellant.

Nos. 52220, 52249.

Supreme Court of Oklahoma.

Nov. 4, 1980.

Whitten, McDaniel, Osmond, Goree & Davies by Dale F. McDaniel, Tulsa, for appellant Canteen Corp.

Gibbon, Gladd, Clark, Taylor & Smith by Richard D. Gibbon and Brad Smith, Tulsa, for appellant George Carder, d/b/a George Carder Plumbing Co.

Parks & Beard by Michael J. Beard, Tulsa, for appellees Kenneth David Boyles and Debra L. Boyles.

Pierce, Couch, Hendrickson, Johnston & Baysinger by D. C. Johnston, Jr. and Calvin W. Hendrickson, Oklahoma City, for appellee Oklahoma Natural Gas Co.

OPALA, Justice:

The issues presented by these appeals are: [1] Did the trial court err in sustaining Oklahoma Natural Gas Company's [ONG] demurrer to plaintiff's evidence? [2] Did the trial court err in refusing to instruct the jury that it apportion liability among the defendants in proportion to the percentage of causal negligence it finds attributable to each? [3] Was it error to instruct the jury on defendant's violation of a local municipal ordinance? [4] Did refusal of a requested jury instruction that liability cannot be supported by one inference placed upon another constitute reversible error? [5] Did the trial court err in allowing testimony of a city mechanical inspector as to certain custom and usage in the trade? [6] Is the jury's verdict tainted by an inconsistency in finding both the building owner and its contractor–plumber negligent?

We hold that: [1] ONG's demurrer was properly sustained; [2] there was no error in refusing to instruct the jury to apportion the several defendants' liability; [3] the jury instruction with respect to the ordinance was free from error; [4] the refusal to submit the requested instruction was not prejudicial and reversible error; [5] specific allegation of custom was not a necessary predicate for the admitted testimony as to certain trade practice; and [6] the jury verdict is not inconsistent since there was evidentiary basis upon which the jury could find both codefendants–owner and plumber–negligent by reason of separate acts.

A passerby [Plaintiff] was injured in an explosion which leveled a building owned by Canteen Corporation [Owner], one of four codefendants. The building had been occupied as a restaurant. It was equipped with a "fire suppression system". The device, attached to the structure's gas pipes directly above the cooking equipment, functioned in conjunction with a gas valve that, in the event of a fire, would automatically shut off the gas.

Owner engaged Accurate Fire Equipment Company [Accurate], another codefendant, to install three identical fire suppression systems at a different location. The system that was in place in the vacant restaurant was to be dismantled and used as one of the three to be installed. An employee of Accurate, who had removed the fire suppression system, did not take out the automatic gas valve which was a part of it. Later, when other employees of Accurate were waiting to begin installation of the system at the new location, they were instructed to "pick up" the missing gas valve from the vacant building. They then removed the valve. In the process they left uncapped the gas pipe they had cut for this purpose. Several months later, during the winter, water froze in the vacant building and its pipes burst. The Owner engaged Carder Plumbing Company [Carder], a third codefendant, to restore heat and prevent refreezing. One of Carder's plumbers turned on the gas into the building and within an hour an explosion occurred in which plaintiff was injured. Plaintiff[1] brought suit against the Owner, ONG, Carder and Accurate to recover damages for injuries sustained in the gas explosion alleged to have been caused by defendants' negligence. The trial court sustained ONG's demurrer to plaintiff's evidence and a jury verdict found against the remaining three defendants. Accurate did not appeal. Owner and Carder brought separate appeals which stand consolidated for decision.

I.

## ERROR IN SUSTAINING ONG'S DEMURRER TO PLAINTIFF'S EVIDENCE

Carder and Owner contend that ONG's demurrer to the plaintiff's evidence was improperly sustained.[2] We disagree.

---

1. Both the injured passerby and his wife sought damages.

2. Both defendants filed a motion for new trial but only one of these defendants [Carder] in-

cluded in it the alleged error in sustaining ONG's demurrer to plaintiff's evidence. The error is hence available only to Carder. 12 O.S.1971 § 991(b).

■ A demurrer is sustainable when there is an entire absence of proof to show any right to recovery.[3] When proof is tested by a demurrer the trial court must view as true all evidence, together with all reasonable inferences from it, which is favorable to the non–demurring party. It is its duty to disregard evidence favorable to the party who is demurring.[4] The plaintiff's evidence showed no duty on the part of ONG to remove the gas meter or shut off gas service to the vacant building. The malfunction of the gas meter went to show improper calibration and faulty measurement of the gas passing through the meter rather than any increase in the amount of gas actually entering the building. Hence, the state of disrepair of ONG's meter had no causal *nexus* with the accumulation of gas or with the explosion. Finally, ONG's failure to odorize the gas rests on a bare allegation without facts to support it. There was *no* evidence from which the trial court would have been justified in inferring lack of ONG's due care either by acts of commission or omission.

## II.

### ERROR IN JURY'S FAILURE TO ASSESS PERCENTAGE OF NEGLIGENCE ATTRIBUTABLE TO EACH DEFENDANT

The Owner and Carder assert error in trial court's refusal to instruct the jury separately to assess against each of the defendants the percentage of negligence found attributable to each. Both the Owner and Carder argue that *Laubach v. Morgan*[5] should have been applied here to the multiple tortfeasors in a negligence action.

If apposite, *Laubach* would require that the negligence of each party be separately assessed.

*Laubach* was a comparative negligence case, within the meaning of 23 O.S.Supp. 1978 § 11,[6] in which the plaintiff was found partially at fault in producing his injury. Here, we are concerned not with comparative negligence, but rather with an admittedly blame·free plaintiff seeking recovery from multiple tortfeasors whose negligence is said to have "concurred, commingled and combined" to produce the harm.

■ The *common ·law negligence liability* concept may be described as "all or nothing" to the plaintiff. If he be blame–free "all" is due him; if he be at fault, however slightly, "nothing" is his due. The *statutory comparative negligence approach* allows the victim at fault to secure some, but not all, of his damages. The *raison d' etre* and rationale of comparative negligence are tied, hand and·foot, to the narrow parameters of a blameworthy plaintiff's claim.[7] We hold that neither the rationale nor the holding of *Laubach* applies to that class of negligence litigation in which the plaintiff is not one among several negligent co–actors.

■ Several liability, fashioned in *Laubach*, was held applicable in a comparative negligence context where the plaintiff was found to be one of several negligent co–actors. There is absolutely *nothing* in *Laubach* to negate the continued force of the common law rule of joint and several liability in those negligent torts which fall completely outside the purview of our comparative negligence legislation.[8] Although some of the language in *Laubach* appears sweep-

**3.** *Martin v. Stratton*, Okl., 515 P.2d 1366, 1368 [1973]; *Tidewater Associated Oil Co. v. Slusser*, Okl., 307 P.2d 827, 828 [1957].

**4.** *Chaplinski v. Gregory*, Okl., 559 P.2d 1244, 1248 [1977]; *Steiger v. Commerce Acceptance of Oklahoma City, Inc.*, Okl., 455 P.2d 81, 86 [1969]; *Lawson v. Lee Eller Ford, Inc.*, Okl., 375 P.2d 913, 916 [1962]; *Evans v. St. Louis ‑ San Francisco Railway Co.*, Okl., 258 P.2d 933, 935–936 [1953].

**5.** Okl., 588 P.2d 1071 [1978].

**6.** Repealed by Okla.Sess.L.1979, c. 38 § 4 and replaced by 23 O.S.Supp.1979 § 13.

**7.** McNichols, *Judicial Elimination of Joint and Several Liability Because of Comparative Negligence ·A Puzzling Choice*, 32 Okla.L.Rev. 1, 11 and 12 [1979].

**8.** 23 O.S.Supp.1979 § 13. Our *new* comparative negligence provision remains yet to be interpreted. *Laubach* dealt with its antecedent version. See note 7.

ing at first blush,[9] it is to be viewed as limited to cases in which the trier is called upon to compare between the plaintiff's want of care on the one hand, and that of one or more defendants on the other hand. Several reasons militate in favor of this conclusion. *No* foundation exists for extending Laubach's proportionate-fault-assessment doctrine to multiple negligent tortfeasors in *all* cases. The states which have abrogated joint and several liability have done so–if at all–only within the context of comparative negligence and quite limitedly at that.[10] Absent an express legislative abrogation, *no* jurisdiction has found it necessary completely to abolish the common–law liability rule. Except as modified in *Laubach* for comparative negligence cases, the common–law rule of joint and several tortfeasors' liability remained unaltered and in force when the claim here under review arose and at the time it came for adjudication.[11] That rule casts ·not on the blameless victim-but on each of the legally vanquished wrongdoers the risk of an insolvent tortfeasor. Because of the recognized difficulty in apportioning fault in most instances, the common ·law rule allocates liability as an integrity. In so doing it strives to afford an injured plaintiff full and just satisfaction of the adjudged obligation.[12]

■ In the instant case there was but a single injury. Implicit in the jury's verdict is its finding that the separate and independent acts of negligence on the part of the codefendants concurred and combined to produce the harmful result for which damages were sought.[13] Even though concert among the tortfeasors was lacking and the act of one codefendant alone may not have brought about the result, each is at common law responsible for the entire damage. There is *no* statutory warrant for a conclusion that the common·law rule was to be scuttled in order to alter the legal obligation owed by negligent co·actors to a fault–free tort claimant.

We hold *Laubach* does not apply to tort litigation in which the injured party is not a negligent co actor.

### III.

### APPLICABILITY OF THE CITY ORDINANCE

Carder asserts error in instructing the jury on Tulsa's mechanical code ordinance

9. The pertinent language in *Laubach*, supra note 5 at 1074, provides: "2. Do away with the 'entire liability rule' and provide multiple tortfeasors are severally liable only, * * * This in effect drastically changes the theory of joint–tortfeasors." At page 1075 the opinion states: "Joint and several liability then will only exist where, for some reason, damages cannot be apportioned by the jury." See also McNichols, *Judicial Elimination of Joint and Several Liability Because of Comparative Negligence–A Puzzling Choice*, supra note 7 at 27.

10. Arkansas has retained the concept of joint and several liability. *Walton v. Tull*, 356 S.W.2d 20, 26 [Ark.1962]; *Wheeling Pipe Line, Inc. v. Edrington*, 535 S.W.2d 225, 226 [Ark. 1976]. California also retained joint and several liability rule, finding, along with the great majority of jurisdictions, that it does not conflict with comparative negligence theory. See *American Motorcycle Ass'n. v. Superior Court*, 578 P.2d 899, 901 [Cal.1978]. Texas' comparative negligence statute provides that each defendant is jointly and severally liable for the entire amount, except that a defendant whose negligence is less than that of the plaintiff is liable only for that portion of the judgment which is attributable to him. Wisconsin pro-

vides for "comparative contribution" among joint tortfeasors in proportion to the party's negligence. See *Bielski v. Schulze*, 114 N.W.2d 105, 108 [Wis.1962].

11. *National Trailer Convoy, Inc. v. Oklahoma Turnpike Authority*, Okl., 434 P.2d 238, 240 [1967]; *Okla. Ry. Co. v. Ivery*, 201 Okl. 245, 204 P.2d 978, 982 [1949]; *Selby Oil and Gas Co. v. Rogers*, 94 Okl. 269, 221 P. 1012, 1013 [1924]; *Northup v. Eakes*, 72 Okl. 66, 178 P. 266, 268 [1919].

Our newly enacted statute on contribution among tortfeasors, Okla.Sess.L.1978, c. 78 § 1, 12 O.S.Supp.1978 § 832, became effective October 1, 1978, which date is *subsequent to* both the occurrence of the harm and the rendition of the judgment in this case.

12. *Note Multiple Party Litigation Under Comparative Negligence in Oklahoma–Laubach v. Morgan*, 13 Tulsa L.J. 266, 269 and 280 [1977].

13. *Green v. Sellers*, Okl., 413 P.2d 522, 528 [1966]; *W. L. Hulett Lumber Co. v. Bartlett–Collins Co.*, 206 Okl. 93, 241 P.2d 378, 383 [1952]; *Oklahoma Ry. Co. v. Ivery*, supra note 11.

with respect to "shutting off" and "turning on" gas.[14] The claimed error is said to have arisen from lack of an evidentiary predicate to show what is a gas "system" within the meaning of the ordinance. We cannot agree.

■ The violation of an ordinance is to be deemed negligence *per se*[15] if the injury complained of (a) was caused by the ordinance's violation, (b) was of the type intended to be prevented by the ordinance and (c) the injured party was one of the class meant to be protected by the ordinance.[16]

■ The question raised is: Does the turning on of gas into a building which has been unheated and vacant several months come within the purview of an ordinance that requires a check of the fittings, ends and valves to make sure they are closed before gas is turned on into a "system of gas piping"? We have no hesitancy in giving a positive answer. The code section at issue contains no definitions of pertinent terms. If the words of the ordinance are taken in their ordinary and usual meaning, the rule appears amply broad to fit the situation at bar. The ordinance was obviously adopted to reduce the chance of allowing gas to escape and thus bring about an explosion–the very cause of the injury here. It was clearly intended to protect the public from injuries occasioned by gas explosions. Plaintiff was hence within the class meant to be protected by the ordinance.

## IV.

### REFUSAL TO INSTRUCT AGAINST FINDING NEGLIGENCE BY PLACING ONE INFERENCE UPON ANOTHER

■ Carder next complains of trial court's refusal to give a requested instruction to the effect that a finding of negligence cannot be rested on one inference placed upon another. Although the proffered charge contains a correct statement of law,[17] its rejection was not error. The instructions as a whole fairly embody the law applicable to the issues involved.[18] Even if the trial court had erred in refusing the requested instruction, the error could not be deemed prejudicial or reversible.

## V.

### CLAIM TO ERROR IN ADMITTING TESTIMONY OF THE PLUMBER'S *MODUS OPERANDI*

Carder next asserts there was error in admitting testimony by a municipal mechanical inspector on a certain practice in the plumbing trade. This error is sought to be predicated on the plaintiff's failure to plead custom in his petition. The inspector testified that as an experienced, licensed gas fitter he always followed the practice of checking the meter immediately *after turning on the gas*. The purpose of this procedure was to search for indication of leaks or for open lines. Carder's employee testified *he had not looked at the meter* after turning on the gas at the ill–fated premises.

The authorities relied upon by Carder require that custom be pleaded where reliance is placed on its breach as a ground of

---

14. The terms of the pertinent Tulsa code provision, § 624.20.5 of the City of Tulsa BOCA Mechanical Code, provide: "Open Fittings· valves: *Before gas is turned on* into a system of gas piping, *or after being shut off*, the entire system shall be checked to make certain that fittings or ends are not open and that all valves at outlets are closed." [Emphasis supplied].

15. *Harbour–Longmire Bldg. Co. v. Carson*, 201 Okl. 580, 208 P.2d 173, 175 [1949].

16. *Foster v. Harding*, Okl., 426 P.2d 355, 358 [1967]; *Elam v. Loyd*, 201 Okl. 222, 204 P.2d 280, 282 [1949].

17. 12 O.S.1971 § 78; *Coker v. Southwestern Bell Telephone Co.*, Okl., 580 P.2d 151, 154 [1978]; *Barger v. Mizel*, Okl., 424 P.2d 41, 47 [1967]; *Lawson v. Anderson and Kerr Drilling Co.*, 184 Okl. 107, 84 P.2d 1104, 1105 [1938].

18. *W. L. Hulett Lumber Co. v. Bartlett–Collins Co.*, supra note 13; *Elam v. Loyd*, supra note 16.

negligence.[19] The very same case law recognizes that when a plaintiff's action is in negligence, proof of the usual practice in the industry, even though not pleaded, may nonetheless be admitted to show a standard of care.[20] This was the case here.

■ The injured party in the case at bar initially sought to predicate recovery against the defendants on *res ipsa loquitur.* Subsequently, as the pre–trial order indicates, the plaintiff changed his theory of recovery against Carder to one in negligence. It was alleged that "... his [Carder's] agent ... failed to check the gas meter after turning on the gas at the fire stop to the building ..." The evidence admitted over Carder's objection went to the negligence of Carder's employee. Negligence is the failure to use due care.[21] Since the plaintiff had pleaded negligence, he was properly allowed to submit proof of its elements. The testimony Carder deems objectionable merely went to show lack of due care. It revealed how others in the same or similar circumstances would proceed. The evidence of the practice followed by a person in Carder's occupation, in the same or similar circumstances, was hence admissible, though the practice was not specifically pleaded.

## VI.

### ALLEGED INCONSISTENCY OF THE VERDICT

Lastly, Carder asserts the verdict is tainted by an inconsistency. The argument advanced is predicated on Carder's view that a verdict against the Owner *ipso facto* exonerates Carder. The verdict is said to impute to the Owner knowledge of the dangerous condition on its premises at the time Carder's employee was instructed to turn on the gas. We cannot accede to this view.

■ A verdict for both the Owner and Carder could be rested on independent acts of negligence, different theories of recovery and diverse sources of liability. *Vis–à–vis* the plaintiff, who was a passerby, the Owner had an independent *nondelegable duty* to prevent danger from its premises to persons on the sidewalk. As a plumber, Carder owed the duty of exercising due care in the performance of the task for which the Owner had hired him. Carder's status as an independent contractor provides no legal shield to the Owner.[22] Nor can any Owner's negligence insulate Carder from liability for its own lack of due care.

■ Where several causes combine to produce an injury, a defendant is not relieved from liability merely because he can show another is also responsible or because he is responsible for only some of the causes.[23] Where there is concurrent negligence and each of the multiple causes is deemed efficient in the sense that without each the harm would not have occurred, the injury may be attributed to any or all of the forces in action.[24]

The judgment is free from error.

AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

**19.** *Fellers v. St. Louis–San Francisco Ry. Co.,* Okl., 572 P.2d 972 [1978]; *Harper v. Levine's, Inc.,* Okl., 435 P.2d 127 [1967]; *Sanders v. C. P. Carter Construction Co.,* 206 Okl. 484, 244 P.2d 822 [1952].

**20.** *Fellers v. St. Louis–San Francisco Ry. Co.,* supra note 19, at 975; *Davis v. Whitsett,* Okl., 435 P.2d 592, 597 [1967].

**21.** *Raimer v. Donelson,* 200 Okl. 695, 199 P.2d 1018, 1019 [1948]; *Phillips Petroleum Co. v. Stephenson,* 191 Okl. 294, 129 P.2d 575 [1942].

**22.** *Davis v. Whitsett,* supra note 20, at 595; *Porter v. Norton-Stuart Pontiac–Cadillac of Enid,* Okl., 405 P.2d 109, 113–114 [1965]; *Safeway Stores v. Duvall,* 208 Okl. 21, 252 P.2d 1022, 1025 [1953].

**23.** *Green v. Sellers,* supra note 13; *Oklahoma Gas and Electric Co. v. Butler,* 190 Okl. 393, 124 P.2d 397 [1942].

**24.** *Green v. Sellers,* supra note 13; *Oklahoma Gas and Electric Co. v. Butler,* supra note 23.