2006 OK CR 33

**James Robert MAXWELL, Petitioner**

v.

**STATE of Oklahoma, Respondent.**

No. C–2005–935.

Court of Criminal Appeals of Oklahoma.

Aug. 8, 2006.

William B. Maxwell, Attorney at Law, Enid, OK, attorney for defendant/appellant at trial and on appeal.

Michael J. Fields, Assistant District Attorney, Garfield County District Attorney's Office, Enid, OK, attorney for the State at trial.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jay Schniederjan, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## OPINION

CHAPEL, Presiding Judge.

¶ 1 James Robert Maxwell was charged by Information in the District Court of Garfield County, Case No. CF–2003–625, with Maintaining a House of Prostitution within 1,000 Feet of a Church, under 21 O.S.Supp.2002, §§ 1028 & 1031(D) (Count I); and Possession of a Firearm While Committing a Felony, under 21 O.S.2001, § 1287 (Count II). On August 11, 2005, pursuant to a plea agreement with the State, Maxwell entered an *Alford* plea of guilty to Count I, before the Honorable John W. Michael.[1] In accordance with the plea agreement, Count II was dismissed and Maxwell was sentenced to imprisonment for five (5) years, all suspended and without supervision, and given a fine of $2500.

¶ 2 At the time of Maxwell's plea, his counsel announced that Maxwell desired to challenge the constitutionality of the new § 1031(D), for maintaining a house of prostitution "within one thousand (1,000) feet of a ... church."[2] Maxwell's counsel announced that he would file a motion to withdraw

Maxwell's plea, but asked that the trial court deny this motion, in order to facilitate Maxwell's challenge to the constitutionality of this statute through the certiorari process. The State raised no objection to this announced plan and was well aware of Maxwell's intentions in this regard.

¶ 3 On August 19, 2005, Maxwell timely filed a motion to withdraw his plea, again challenging the constitutionality of § 1031(D). On September 14, 2005, the Honorable John W. Michael denied Maxwell's motion to withdraw his plea during the court's motion docket. Maxwell's petition for certiorari is now properly before this Court.[3]

¶ 4 Before considering Maxwell's substantive claims, we address the challenges raised by the State to the propriety of his certiorari appeal. The State begins by asserting that by challenging the constitutionality of § 1031(D), Maxwell "is in effect challenging the sufficiency of the Information" in the case and also "challenging the sufficiency of the evidence to bind him over for trial at preliminary hearing." Maxwell is doing no such thing, and the State has no basis for suggesting otherwise.

¶ 5 The State further urges, without citation to factual or legal support, that because Maxwell failed to appear at the hearing on his motion to withdraw his plea, the motion was denied by "default," and that "the trial court never had an opportunity to rule on the constitutional issues raised in Petitioner's motion."[4] The trial court was well aware of Maxwell's constitutional challenge and had already rejected this challenge on the merits. There was no reason for Maxwell's presence at the hearing on his motion to withdraw his plea, since he had earlier requested that the trial court deny this mo-

---

1. Maxwell's counsel explained that Maxwell was entering an *Alford* plea, even though he admitted the facts constituting the basic offense of maintaining a house of prostitution, under 21 O.S.Supp.2002, § 1028, because he objected to the application of 21 O.S.Supp.2002, § 1031(D). In particular, Maxwell admitted that he operated the Chisholm Trail Motel, in Enid, as a house of prostitution and that the motel was within 1,000 feet of the Calvary Assembly of God Church.

2. 21 O.S.Supp.2002, § 1031(D). This provision was adopted in 2002 and took effect on April 19, 2002.

3. Maxwell's brief in support of his petition was filed on December 19, 2005. On March 8, 2006, this Court issued an order directing the State to respond to Propositions I and III of Maxwell's brief, noting that Proposition II had been waived. The State's brief was filed on April 3, 2006.

4. Although the docket entry for the denial of Maxwell's motion to withdraw his plea notes that the defendant was not present, it does not state that the motion was denied due to "default."

tion, in order to effectuate a review of his constitutional claim in this Court. The State was fully aware of Maxwell's intentions in this regard and raised no objection whatsoever in the trial court. Hence this Court rejects the State's claim that Maxwell has waived review of his constitutional challenge.

¶ 6 This Court also rejects the State's assertion that our Rule 4.2—dealing with certiorari appeals from convictions based on guilty pleas and pleas of nolo contendere—prohibits this kind of certiorari challenge to the constitutionality of a statute.[5] In *Allen v. City of Oklahoma City*,[6] this Court held that a defendant can challenge the legality of his sentence through a certiorari appeal following a plea.[7] We also recognized that such a challenge can properly include a claim that the statute or city ordinance, upon which the defendant was convicted and sentenced, is unconstitutional.[8] We noted, in *Allen*, that a trial court is not required to hold an evidentiary hearing on a motion to withdraw a plea in a case where the defendant is not challenging the voluntariness of the plea or otherwise making a factual claim regarding the validity of the plea.[9]

¶ 7 Thus this Court concludes that Maxwell's constitutional challenges to 21

O.S.Supp.2002, § 1031(D) are properly before this Court. Although this Court has recognized other methods for bringing such a challenge, where the defendant does not contest the facts alleged to constitute a particular crime,[10] our rules do not prohibit a challenge to the constitutionality of a statute through the certiorari appeal process, following a plea of guilty or nolo contendere.[11]

¶ 8 In Proposition I, Maxwell argues that the § 1031(D) "special protection" of churches violates the Establishment Clause of the United States Constitution.[12] Under the prior version of § 1031, a person who violated any of the prostitution and lewdness-related provisions of §§ 1028, 1029, and 1030 was guilty of only a misdemeanor, unless the offense involved an act of prostitution by someone who knew he/she was infected with the HIV virus or "child prostitution," involving a person under the age of 16.[13] The new version of § 1031 treats all offenses under §§ 1028, 1029, and 1030 as felonies, if they are committed "within one thousand feet (1,000) feel of a school or church."[14]

¶ 9 Maxwell begins by arguing that "[a]lthough not by statute or caselaw," the word "church" has been defined to refer exclu-

---

5. The State asserts that Maxwell's challenge is improper because it is not based upon a claim that his guilty plea was not entered knowingly and voluntarily and because Maxwell did not actually want to withdraw his guilty plea.

6. 1998 OK CR 42, 965 P.2d 387.

7. *Id.* at ¶ 4, 965 P.2d at 388 (citing *Lozoya v. State*, 1996 OK CR 55, ¶ 26, 932 P.2d 22, 30). In *Vigil v. State*, 1988 OK CR 276, 765 P.2d 794, we likewise noted: "The scope of review of a guilty plea, and thus a nolo contendere plea, is limited to whether (1) the plea was knowing and voluntary, (2) the Information was sufficient to confer jurisdiction, and (3) the sentence was legal." *Id.* at ¶ 3, 765 P.2d at 794 (citation omitted).

8. *See Allen*, 1998 OK CR 42, ¶¶ 4–6, 965 P.2d at 388–90 (addressing petitioner's constitutional challenges to city ordinance, upon which he pled no contest).

9. *See id.* at ¶ 7, 965 P.2d at 390 ("[I]t is irrelevant that no evidentiary hearing was held on Allen's motion to withdraw his plea. This is because Allen is not challenging the voluntariness of his plea or in any way contending that it was entered in violation of the mandates of *King v. State*."). We further found, in *Allen*, that any possible

error in the trial court's failure to hold an evidentiary hearing was "certainly harmless," because the defendant was not alleging that his plea was involuntary or that he was innocent, and because the record established that he did not have other valid grounds for withdrawing his plea. *Id.* at ¶ 8, 965 P.2d at 390.

10. For example, the defendant could agree to a bench trial on stipulated facts.

11. *See generally* Rules 4.1–4.6 (Procedures for Appeal by Certiorari from Plea of Guilty or Nolo Contendere), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2005).

12. *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion . . .").

13. *See* 21 O.S.2001, § 1031.

14. *See* 21 O.S.Supp.2002, § 1031(D). Under this provision any such violation is punishable by imprisonment for up to five years and by a fine of up to $2,500 for the first offense. The fine can be as high as $5,000 for a second offense and as high as $7,500 for third and subsequent offenses.

sively to "the religious society founded and established by Jesus Christ, to receive, preserve, and propagate his doctrines and ordinances." [15] Maxwell then leaps to the conclusion that "the amendment protects only Christian ... congregations, houses of worship, gymnasiums," *etc.* We find nothing in the text of § 1031(D) to justify interpreting the generic word "church" so narrowly and specifically.[16]

■ ¶ 10 The legislature chose the basic term "church," and we have no reason to interpret this term such that it applies only to Christian churches.[17] We do not hesitate to conclude that the word "church" in § 1031(D) includes traditional places of worship for other religious communities, such as synagogues and mosques. While difficult line-drawing questions regarding the extent of the term "church" in this context can be hypothesized, they are not at issue in the

current case. Hence we do not resolve them here.[18] Because the term "church" has a commonly understood meaning, and because Maxwell does not contest the fact that the Calvary Assembly of God Church (within 1,000 feet of which he admitted to maintaining a house of prostitution) qualifies as a "church" under any plausible definition, we decline to attempt to further identify the specific parameters of this term.[19]

■ ¶ 11 Maxwell's broader claim is that the "special protection" given churches, through the operation of § 1031(D), constitutes an unconstitutional establishment of religion, in violation of the First Amendment of the United States Constitution. In 1971, in *Lemon v. Kurtzman,*[20] the United States Supreme Court announced a three-part test for evaluating claims that a particular statute violates the Establishment Clause of the United States Constitution: "First, the stat-

In addition, 40 to 80 hours of community service can be required for any conviction under this provision. *Id.* It should be noted that Maxwell does not challenge the constitutionality of the § 1031(D) enhancements based on proximity to a "school."

**15.** Maxwell quotes the third edition of Black's Law Dictionary, published in 1933, as the source of this definition. He neglects to note that this same source provides other definitions of the word "church," such as "[a]n organization for religious purposes or for the public worship of God" and also "a religious body organized to sustain public worship." Black's Law Dictionary 325 (3d ed.1933). Similar definitions of "church," which do not limit the term to only Christian churches, appear in subsequent editions of Black's Law Dictionary, though the seventh and eighth editions, published in 1999 and 2004, respectively, fail entirely to define the term.

**16.** Other than the selective citation to the 3rd edition of *Black's Law Dictionary,* Maxwell provides no authority for limiting the statute's term "church" to only Christian churches.

**17.** Hence we do not further address any of Maxwell's arguments that are based upon the assumption that "church" in § 1031(D) refers only to Christian churches.

**18.** We recognize that the word "church" has various connotations. The word can refer to a group of people with the same or similar religious beliefs (*e.g.,* the Baptist Church), the beliefs or teachings of a particular faith (*e.g.,* the Catholic Church's position on abortion), or a specific

building or structure where religious services are conducted (*e.g.,* the church on Elm Street). We note that in the context of § 1031(D), the word "church," like the term "school," is intended to designate a particular kind of building or structure, rather than simply a group of people or a particular religious community. We recognize that religious communities, for various reasons, sometimes meet in settings that are unlike the traditional church structure—which is built to serve as a place of communal worship and functions primarily, if not exclusively, as a place of communal worship. Yet we decline to decide, in the current case, whether the § 1031(D) term "church" includes non-traditional structures, such as temporary buildings, residential homes, converted facilities, office buildings, store fronts, *etc.,* that may be used by particular groups, either temporarily or permanently, as a place to gather and conduct religious services.

**19.** We do note that in the civil case of *Foster v. Harding,* 1967 OK 46, 426 P.2d 355, the Oklahoma Supreme Court held that the word "church" in a Tulsa City Ordinance did not include a mausoleum. *Id.* at ¶ 11, 426 P.2d at 358. Within its decision the Oklahoma Supreme Court noted that when the term "church" refers to a place, it can be defined as "an edifice or place consecrated to the honor of God, or where persons regularly assemble for worship," and that it has also been defined as "a building intended primarily for purposes connected with a faith, or for propagating a particular form of belief." *Id.* at ¶ 12, 426 P.2d at 358 (all citations omitted).

**20.** 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

ute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . .; finally, the statute must not foster 'an excessive government entanglement with religion.' "[21] More recently, the Court has noted that in relation to the question of an unconstitutional "advancement" of religion, courts should consider "whether the challenged governmental practice either has the purpose or effect of 'endorsing' religion."[22] Although the basic, three-prong *"Lemon* Test" has been criticized and critiqued, it remains the governing standard in Establishment Clause jurisprudence.[23]

■ ¶ 12 This Court finds that § 1031(D) does not violate the Establishment Clause of the United States Constitution. It has a secular legislative purpose, namely, to deter prostitution-related activities in areas where the public, especially families with young children and also the elderly, can reasonably be expected to gather. The intent of § 1031(D) to protect potentially vulnerable populations, especially children, from exposure to prostitution-related activities is further evidenced by the fact that it applies equally to such activities that occur within 1,000 feet of a school—the legality of which Maxwell does not challenge. We find that the principal or primary effect of § 1031(D) is not the advancement of religion, but rather the deterring of prostitution, particularly in locations where vulnerable populations can reasonably be expected to gather. This provision does not advance religion generally or any specific faith in particular. Nor does it endorse religious belief or favor any particular faith community.

¶ 13 Furthermore, § 1031(D) does not foster excessive government "entanglement" with religion, since enforcement is left to traditional law enforcement personnel, who need only be able to recognize that a particular structure is a "church" and then measure the distance between this structure and the alleged house of prostitution (or other prohibited facility or action) to determine if § 1031(D) is potentially applicable.[24] In the current case, law enforcement personnel did not even need to interact with church personnel. They simply recognized that the relevant building was a "church"—based upon signs bearing the church's name, posted times for worship, parked vehicles bearing the church's name, *etc.*—and measured the distance to Maxwell's place of business.

¶ 14 This Court joins the other courts that have considered comparable statutes and determined that they do not violate the Establishment Clause of the U.S. Constitution.[25] Hence we reject Maxwell's Proposition I claim.

¶ 15 As this Court noted in its March 8, 2006, *Order Directing the State to File a*

21. *Id.* at 612–13, 91 S.Ct. at 2111 (all citations omitted).

22. *County of Allegheny v. ACLU Greater Pittsburgh Chapter,* 492 U.S. 573, 592, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472 (1989). The *County of Allegheny* Court majority further stated: "The Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community.' " *Id.* at 593–94, 109 S.Ct. at 3101 (citation omitted). The *County of Allegheny* Court also agreed upon the "bedrock Establishment Clause principle that, regardless of history, government may not demonstrate a preference for a particular faith." *Id.* at 605, 109 S.Ct. at 3107.

23. Establishment Clause jurisprudence has been extremely divisive in the U.S. Supreme Court, and no single test, post-*Lemon,* has garnered endorsement by a majority of Justices. *See, e.g., County of Allegheny,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (with opinions filed by five different justices and a majority of the Court's members joining only in parts of Justice Blackmun's opinion). Nevertheless, in *Lamb's Chapel v. Center Moriches Union Free School Dist.,* 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993), the Court noted that while the *Lemon* test had been much maligned, by Supreme Court Justices as well as others, it "has not been overruled." *Id.* at 395 n. 7, 113 S.Ct. at 2148 n. 7.

24. This Court notes, once again, that this case does not involve a situation where there is any question regarding whether the building described as a "church" merits that designation. This Court also notes that this case does not involve any challenge to the State's allegation that the distance between the church and the structure serving as a house of prostitution was less than 1,000 feet or any challenge to the State's method for measuring this distance.

25. *See, e.g., People v. Falbe,* 189 Ill.2d 635, 244 Ill.Dec. 901, 727 N.E.2d 200, 208 (2000) (rejecting Establishment Clause challenge to sentencing

Response Brief, Maxwell's (one-sentence) Proposition II claim has been waived.

¶ 16 In Proposition III, Maxwell asserts that 21 O.S.Supp.2002, § 1031(D) constitutes an impermissible delegation of legislative power to a limited number of religious groups, in violation of Article 4, Section I of the Oklahoma Constitution. Within this proposition Maxwell asserts, without evidence or logical argument, that § 1031(D) somehow foists upon religious groups the obligation and authority to police their neighborhoods for houses of prostitution and similar establishments. Yet even this assertion, which is not established, does not support Maxwell's constitutional claim, which is that § 1031(D) somehow delegates *legislative* authority to particular religious groups. There is nothing in § 1031(D) that can reasonably be described as a delegation of legislative authority to particular churches or religious groups.[26] Hence this claim is rejected as well.

### Decision

¶ 17 Maxwell's petition for certiorari review is **GRANTED**. However, the Judgment and Sentence of the District Court, convicting Maxwell of one count of Maintaining a House of Prostitution within 1,000 Feet of a Church and sentencing him as described therein, is **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, A. JOHNSON and LEWIS, JJ.: concur.

LUMPKIN, V.P.J.: concur in results.

---

enhancement for drug offenses committed within 1,000 feet of a "church," noting that the enhanced penalty provisions "are obviously intended to protect segments of our society which may well be considered particularly vulnerable and less able to deal with the incursions of drug trafficking and its related evils" and also that "[t]he secular purpose of the statute is to 'deter narcotics activity.'") (citation omitted); *Easley v. State*, 755 So.2d 692, 693 (Fla.Dist.Ct.App.1999) (rejecting Establishment Clause challenge to sentencing enhancement for drug offenses committed within 1,000 feet of a place where "a church or religious organization regularly conducts religious services," and finding that provision has apparent secular purpose of "deterring drug sales near places where the public, especially families and young people, have a tendency to gather"); *Hobby v. State*, 761 So.2d 1234, 1238 (Fla.Dist.Ct.App.2000) (rejecting parallel Establishment Clause challenge and noting that the challenged sentencing enhancement "does not

interfere with or promote the practice of religion" and has the legitimate secular purpose noted in *Easley* ).

**26.** Section 1031(D) is not comparable to the Massachusetts statute struck down in *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982). In *Larkin*, the United States Supreme Court found that a Massachusetts statute, which gave schools and churches "veto power" over the granting of liquor licenses to establishments within 500 feet of their church or school, violated the Establishment Clause. *Id.* at 122–27, 103 S.Ct. at 509–12. The Court wrote: "The Framers did not set up a system of government in which important, discretionary governmental powers would be delegated to or shared with religious institutions." *Id.* at 127, 103 S.Ct. at 512. Oklahoma's § 1031(D) does not establish any such shared or delegated power.